UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

In re:

JEFFREY DEAN AND DEBORAH DEAN,

    Debtors.
_____

JEFFREY AND DEBORAH DEAN,

    Appellants,

v.

DENNIS LEE BURMAN, TRUSTEE AND TAE YON KIM,

    Appellees.

No. C05-2149P

ORDER ON BANKRUPTCY APPEAL

This matter comes before the Court on an appeal by debtors Jeffrey and Deborah Dean of an order by the United States Bankruptcy Court for the Western District of Washington approving a settlement between Trustee Dennis Lee Burman and creditor Tae Yon Kim. For the reasons stated below, the Court REVERSES the Bankruptcy Court's order approving the settlement and REMANDS this matter to the Bankruptcy Court for further proceedings consistent with this order.

**Background**

The appellants are Jeffrey and Deborah Dean, a married couple. Ms. Dean owned a company called Spectrum Print and Mail, which she sold in 2000 for several million dollars. In December 2001,

ORDER - 1

former Spectrum employee Tae Yon Kim filed suit against the Deans in Snohomish County Superior Court, arguing that they failed to give him stock or stock options that he had been promised. On October 14, 2004, the jury ruled in favor of Mr. Kim and awarded him $500,000. Based on this judgment, Mr. Kim obtained a lien against a house that was titled in Ms. Dean's name.

The Deans appealed the state court judgment, arguing among other things that the trial court erred by allowing Mr. Kim's promissory estoppel claims to be tried to a jury – an issue of first impression under Washington law. However, the Deans did not stay enforcement of the judgment pending appeal by posting a supersedeas bond. The Deans assert that they could not afford a bond.

On December 8, 2004, Mr. Dean filed for bankruptcy. On January 25, 2005, Ms. Dean filed for bankruptcy as well. The two cases were eventually consolidated under Chapter 7. Appellants maintain and appellees do not dispute that the Bankruptcy Court granted the Deans relief from the automatic bankruptcy stay to pursue their appeal of Mr. Kim's judgment.

The bankruptcy trustee obtained an order to sell the house titled in Ms. Dean's name. The sale of the house resulted in net proceeds of approximately $335,000, which appears to constitute the bulk of the estate's assets. Based on his judgment lien, Mr. Kim argued that he was entitled to all proceeds from the sale of the house as a secured creditor. The Trustee argued that Mr. Kim's judgment lien was an avoidable preference under 11 U.S.C. § 547. The Trustee argued that Mr. Dean's bankruptcy filing, which occurred less than 90 days before Mr. Kim recorded his judgment, brought all of the Deans' community property into the bankruptcy estate, including the house. Mr. Kim argued that the house was Ms. Dean's separate property and that his claim was not an avoidable preference because Ms. Dean had filed for bankruptcy more than 90 days after Mr. Kim's judgment was recorded.

The Trustee and Mr. Kim reached a settlement regarding Mr. Kim's secured creditor status. Under the settlement, the Trustee agreed to pay Mr. Kim $230,000 as a secured creditor, with the remainder of the $500,000 judgment treated as an unsecured claim. The Trustee filed a motion seeking the Bankruptcy Court's approval of the settlement. To support the proposed settlement, the

ORDER - 2

Trustee estimated that he had a 65 to 75 percent chance of proving that the house was community property, rather than Ms. Dean's separate property. He also estimated that it would cost between $10,000 - $20,000 to hire a forensic accountant to prove that the house was community property, as well as another $10,000 in legal fees to conduct a trial to determine whether the house was community property. The Trustee stated that he felt it would be in the best interest of the creditors to avoid these litigation costs, which would be drawn from the assets of the estate.

None of the Deans' creditors objected to the proposed settlement. However, the Deans filed objections to the proposal. In particular, the Deans argued that it would be premature to settle the dispute while the Deans were pursuing their appeal of Mr. Kim's state court judgment. In response, the Trustee noted that the state court judgment was a final judgment and the Deans had failed to obtain a supersedeas bond to stay the judgment pending appeal.

The Bankruptcy Court held a hearing on the settlement proposal on November 18, 2005. After hearing from the Trustee, Mr. Kim, and the Deans, the Bankruptcy Court issued the following oral ruling:

> It seems to me that under the circumstances of this case that the settlement proposed by the trustee is a reasonable one and we do have a final judgment, although it's on appeal. I'm going to approve the settlement as it was originally drafted.

On December 5, 2005, the Bankruptcy Court entered a written order that awarded Mr. Kim a secured claim against the residence in the amount of $230,000 and directed the Trustee to disburse $230,000 to Mr. Kim from the proceeds of the sale of the house.

The Deans filed a timely appeal of the Bankruptcy Court's order. On June 5, 2006, after this appeal was fully briefed, the Washington Court of Appeals reversed the $500,000 judgment entered against the Deans by the Snohomish County Superior Court, finding that the trial court had erred by allowing Mr. Kim's promissory estoppel claims to be tried to a jury. The Court of Appeals remanded for a new, nonjury trial.

ORDER - 3

**Analysis**

1. Motion to Supplement Record

The Deans have filed a motion asking the Court to "supplement the record with new evidence on appeal." (Dkt. No. 13). The Deans seek to supplement the record to include the Washington Court of Appeals' ruling in Kim v. Dean, 2006 WL 1522631 (Wn. App. June 5, 2006), which reversed Mr. Kim's judgment against the Deans and remanded the case for a new trial.

It is ordinarily improper for a court to supplement the record on appeal to include new evidence that was not before the trial court. See, e.g., Morrison v. Hall, 261 F.3d 896, 900 n.4 (9th Cir. 2001) (noting that parties may not "add to or enlarge the record on appeal to include material that was not before" the trial court). However, the Court may take judicial notice of matters of public record. See Reyn's Pasta Bella, LLC v. Visa USA, Inc., 442 F.3d 741, 746 (9th Cir. 2006) (noting that appellate court "may take judicial notice of court filings and other matters of public record"). Therefore, the Court denies the Deans' motion to supplement the record as moot, since the Court can simply take judicial notice of the Washington Court of Appeals' ruling.

2. Issues on Appeal

A bankruptcy court's approval of a settlement is reviewed for abuse of discretion. In re A&C Props., 784 F.2d 1377, 1380 (9th Cir. 1986). The Deans argue the Bankruptcy Court abused its discretion by failing to make an independent and informed judgment as to whether the Trustee's settlement with Mr. Kim was in the best interest of the estate in light of all relevant circumstances. In particular, the Deans argue that the Bankruptcy Court failed to consider the possibility that the Deans would prevail on their pending appeal of Mr. Kim's state court judgment.

The Trustee argues that the Bankruptcy Court could not consider the merits of the pending appeal under the Rooker-Feldman doctrine, which prevents federal courts from collaterally attacking state court judgments. The Trustee also asserts that the Deans lack standing to pursue this appeal and that the appeal is moot because the settlement has already been executed.

ORDER - 4

A.     Standing

The Trustee argues that the Deans lack standing to pursue this appeal because any injuries to the Deans as a result of the order approving the settlement are speculative and hypothetical. Putting aside the recent decision by the Washington Court of Appeals, the Court finds that the Deans have standing to pursue this appeal.

The Ninth Circuit applies a "person aggrieved" standard for evaluating whether a person has standing to appeal a bankruptcy court's order. Under this standard, "[o]nly those persons who are directly and adversely affected pecuniarily by an order of the bankruptcy court have been held to have standing to appeal that order." In re Fondiller, 707 F.2d 441, 442 (9th Cir. 1983). Put another way, "the order must diminish the appellant's property, increase its burdens, or detrimentally affect its rights." In re P.R.T.C., 177 F.3d 774, 777 (9th Cir. 1999). As a result, a "hopelessly insolvent debtor does not have standing to appeal orders affecting the size of the estate" because there will be no surplus to distribute to the debtor after bankruptcy. Fondiller, 707 F.2d at 442; see also P.R.T.C., 177 F.3d at 777 ("Ordinarily, a debtor cannot challenge a bankruptcy court's order unless there is likely to be a surplus after bankruptcy") (emphasis added).

Here, the Trustee does not argue that the Deans are hopelessly insolvent. Instead, the Trustee suggests the possibility of a surplus after bankruptcy is too speculative to support standing. The Court disagrees. Mr. Kim's claim represents the vast majority of the estate's liabilities and the Bankruptcy Court lifted the automatic stay to permit the Deans to pursue their state court appeal of Mr. Kim's judgment while the bankruptcy case was pending. There is a reasonable possibility that this debt will be reduced or eliminated as a result of the ongoing state court litigation, leaving the estate with a surplus after bankruptcy. Under these circumstances, the Court finds that the Deans have a sufficient pecuniary interest to provide them with standing to appeal the Bankruptcy Court's order.

ORDER - 5

1    B.    Mootness

2    The Trustee also argues that the Deans' appeal is moot because the Deans did not obtain a stay

3  of the Bankruptcy Court's order and Trustee has already disbursed funds to Mr. Kim pursuant to the

4  agreement.  In support of this argument, the Trustee cites In re Ernst Home Center, Inc., 221 B.R.

5  243 (B.A.P. 9th Cir. 1998).

6    The court in Ernst noted that "general principles of mootness require that an appeal must be

7  dismissed when the appellant fails to obtain a stay pending appeal and events occur which prevent the

8  appellate court from fashioning any effective relief." Id. at 247.  The court also observed that effective

9  relief is "particularly difficult to fashion where the rights of third parties are affected."  In Ernst, the

10 bankruptcy court's order had set in motion a complicated set of transactions that had already been

11 completed and "would be difficult, if not impossible, to unwind." Id.

12    Unlike Ernst, the transaction authorized by the Bankruptcy Court's order is not complex and

13 would not be difficult to unwind.  Therefore, the Court finds that the appeal is not moot.  See, e.g., in

14 re Lowenschuss, 170 F.3d 923, 933 (9th Cir. 1999) (appeal of bankruptcy court order not moot where

15 case "does not present transactions that are so complex or difficult to unwind").

16    C.    Approval of Settlement Agreement

17    A bankruptcy court has "great latitude in approving compromise agreements." In re Woodson,

18 839 F.2d 610, 620 (9th Cir. 1988).  However, "the court's discretion is not unlimited." Id.  In

19 determining the fairness, reasonableness and adequacy of a proposed settlement agreement, the

20 bankruptcy court must consider:

21>    (a) The probability of success in the litigation; (b) the difficulties, if any, to be encountered in
     the matter of collection; (c) the complexity of the litigation involved, and the expense,
22>    inconvenience, and delay necessarily attending it; (d) the paramount interest of the creditors
     and a proper deference to their reasonable views in the premises.
23

In re A & C Props., 784 F.2d 1377, 1381 (9th Cir. 1986).

24

25

ORDER - 6

The duty of the reviewing court is to "determine whether the settlement entered into by the trustee was reasonable, given the particular circumstances of the case." Id. A bankruptcy court must "amply" consider the various factors regarding the reasonableness of a settlement. Id. "Broad as the bankruptcy court's power may be, it may not completely ignore a nonfrivolous objection [to a proposed settlement], at least without giving a reasoned explanation for doing so." Woodson, 839 F.2d at 621. As one commentator has noted:

> [A]n order approving a settlement will not be upheld or approved if the order is merely couched in boilerplate language, with no evaluation of the facts or analysis of the law evident from the record. If the court overrules objections and approves a settlement, the court should write an opinion explaining why it approved the settlement.

6 Norton Bankruptcy Law & Practice 2d § 145.2 (1993).

Here, the Bankruptcy Court's oral ruling simply expressed the court's view that the settlement was "reasonable" under the circumstances and noted that "we do have a final judgment, although it's on appeal." The written order provides no additional explanation. The lack of a reasoned explanation for the Bankruptcy Court's decision and the failure to indicate that all relevant factors were considered makes appellate review difficult. "It is essential . . . that a reviewing court have some basis for distinguishing between well-reasoned conclusions arrived at after a comprehensive consideration of all relevant factors and mere boiler-plate approval phrased in appropriate language but unsupported by evaluation of the facts or analysis of the law." Protective Comm. for Indep. Stockholders of TMT Trailer Ferry, Inc. v. Anderson, 390 U.S. 414, 434 (1968).

However, "the failure to write an opinion may not result in reversal if the record contains adequate facts to support the court's decision." Norton, supra, § 1; see also In re A&C Props., 784 F.2d at 1383 ("where the record supports approval of the compromise, the bankruptcy court should be affirmed"). At the same time, reviewing courts are not required "to comb the record to uphold a settlement despite inadequate findings" by the bankruptcy court. In re American Reserve Corp., 841 F.2d 159, 163 (7th Cir. 1987).

ORDER - 7

1      Here, the record leaves important questions unanswered and does not provide sufficient

2   support for approval of the settlement. In particular, the record does not reveal how the interests of

3   creditors other than Mr. Kim were served by approving the settlement before the pending state court

4   appeal was decided. The Bankruptcy Court had previously granted the Deans relief from the

5   automatic stay to pursue their appeal of Mr. Kim's state court judgment while the bankruptcy

6   proceedings were pending. This judgment constituted most of the estate's liabilities. The Washington

7   Court of Appeals would issue a decision on the appeal in a matter of months. The Deans also maintain

8   that the case schedule in the Bankruptcy Court did not require the Trustee to file a preference claim

9   against Mr. Kim until approximately December 2006. There is no apparent reason why a compromise

10  could not have been deferred until the Washington Court of Appeals ruled on the appeal.

11     The Trustee argues that federal courts generally are prohibited from collaterally attacking the

12  judgments of state courts under the Rooker-Feldman doctrine. See, e.g., In re Audre, 216 B.R. 19, 26

13  (B.A.P. 9th Cir. 1997) (noting that Rooker-Feldman doctrine "provides that a federal district court

14  lacks the jurisdiction to hear a collateral attack on a state court judgment or to review final

15  determinations of state court decisions."). However, the case law cited by the Trustee does not

16  suggest that the Rooker-Feldman doctrine barred the Bankruptcy Court from even considering the

17  Deans' likelihood of success in their appeal of Mr. Kim's state court judgment. On its face, the

18  Deans' appeal raised a novel issue of Washington law (i.e., whether a plaintiff has a right to a jury trial

19  for claims of promissory estoppel). Taking such considerations into account in determining whether

20  to approve the settlement would not constitute a collateral attack on the state trial court's judgment.

21                                       **Conclusion**

22     The Bankruptcy Court did not provide a reasoned explanation for its approval of the

23  settlement, nor does the record does not provide sufficient support for approval. Therefore, the Court

24  finds that the Bankruptcy Court abused its discretion in approving the settlement. The Bankruptcy

25  Court's "Order Approving Compromise and Settlement of Secured Creditor Status by Tae Kim

ORDER - 8

Against Debtors' Residence and Authorizing Payment to Tae Kim on His Secured Claim" is REVERSED and this matter is REMANDED to the Bankruptcy Court. On remand, the Bankruptcy Court should take appropriate measures to facilitate the recovery of the funds that were paid to Mr. Kim pursuant to the settlement agreement.

The clerk is directed to provide copies of this order to all counsel of record.

Dated:   July 25, 2006

                                        s/Marsha J. Pechman
                                        Marsha J. Pechman
                                        United States District Judge

ORDER - 9